IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CAROLINE PAULA MORE,

         Plaintiff,

 v.

DAN CAREY and DANIEL GUENTZ,

         Defendants.[1]

OPINION and ORDER

17-cv-401-jdp

---

  Plaintiff Caroline Paula More was arrested by defendants Sergeant Dan Carey and Deputy Daniel Guentz of the Iowa County Sheriff's Department. More brings Fourth Amendment claims against Carey and Guentz based on her allegation that she had been handcuffed to a bed for three hours by sheriff's department staff. Dkt. 8. Defendants move for summary judgment. Dkt. 24. Even if jurors were to believe More's account, they could not reasonably conclude that defendants violated More's rights. Guentz acted reasonably in restraining More and Carey was not involved in handcuffing her at all. I will grant defendants' motion for summary judgment and dismiss this case.

  More also asks me to reprimand and sanction defendants' attorney. Dkt. 45. She says that he intentionally delayed mailing her a copy of defendants' reply brief. But More has not shown that the delay was intentional or that she was prejudiced in any way by the delay, so I will deny her request.

---

[1] The court has updated the caption to reflect defendants' names as stated in their motion for summary judgment, Dkt. 25.

## FACTUAL BACKGROUND

More did not respond to defendants' proposed facts or submit her own proposed facts as required by this court. Instead, she includes unsworn factual allegations in her brief. Because More is proceeding pro se, I will consider those allegations as if she had submitted them in a sworn affidavit or declaration. In setting out the facts, I credit More's version of any disputed fact.

On the morning of May 24, 2014, Guentz pulled More over for speeding. More was confrontational and profane with Guentz, so he quickly radioed for backup. She told him that she had mental health problems, and she said several times that she wanted to kill herself. She said that she would use her car to do so. The parties do not explain what More meant by this, but I infer that More meant that she would intentionally crash her car. Guentz noticed More nervously touching her keys, which were in the ignition. He told More to take her keys out of the ignition and place them in the car's ashtray, which she did. She reached for them twice but stopped when Guentz told her to do so. She also reached toward the back seat of her car several times and refused to follow Guentz's orders to stop doing so.

A second officer, who is not a defendant, arrived, after which Guentz told More to get out of her car. More began yelling at the second officer. Guentz told More that he was detaining her for her safety because of her statements about suicide and her refusal to obey his commands. The officers took More to a squad car, where she sat on the back seat but refused to put her legs inside the car. They had to force More's legs into the car, after which they put on her seatbelt and closed the rear doors.

Carey then arrived and spoke with More. More yelled at Carey and refused to submit to a field sobriety test or a breath test. Guentz then took More to Upland Hills Hospital, but the other officers did not accompany them.

Guentz and More arrived at Upland Hills shortly before noon. Guentz says that More was continuously argumentative and profane toward him and Upland Hills staff. Dkt. 28-1, at 2. More says that Guentz was not present between 12:03 and 1:45 p.m. and that he could not have observed her demeanor during that time. Dkt. 42, at 5.

More said in her amended complaint that "the Iowa County Sheriff's Department . . . handcuff[ed] her to a hospital bed." Dkt. 7, at 5. She does not clearly state in her response brief when or where she was handcuffed, or by whom. I infer that she alleges that Guentz handcuffed her to a hospital bed at Upland Hills shortly after they arrived. Guentz's report also states that More was handcuffed at this time, but it does not say whether she was handcuffed to her bed. *See* Dkt. 28-1, at 2.

More's handcuffs were removed shortly before 2:00 p.m. to allow her to use the bathroom with a female escort. On the way back to her room, More became loud and argumentative and began to threaten hospital staff. Her comments were audible in the busy emergency room. Guentz tried to reapply More's handcuffs, but she pulled her body away, becoming more physically and verbally hostile. Hospital staff helped control More's right arm, allowing Guentz to handcuff her. Staff then gave More a shot of calming medication, which appeared to calm More physically, although she continued to verbally berate Guentz and hospital staff.

Later that afternoon, Guentz took More to Tellurian Hospital for detoxification purposes, where she continued to be verbally aggressive. Guentz took More to a secure holding

3

room, where he removed her handcuffs and left. The parties do not say whether More complained about the handcuffs while she was restrained, but she did not tell Guentz that her handcuffs were too tight or were causing excessive pain or numbness. She now says that her right wrist "ach[ed] with pain, or nerve sensitivity" and that the jangling of the handcuffs distressed her and caused her to feel discouraged. Dkt. 42, at 3–4. She does not say that she suffered any lasting injury or that she sought medical attention for this pain.

At some point in the afternoon, staff took a blood sample from More, although it is not clear whether this was done at Upland Hills or Tellurian. Testing later showed that More's blood alcohol content was 0.145 grams per 100 milliliters. Dkt. 28-2.

ANALYSIS

A. **Summary judgment**

More brings claims against Carey and Guentz under the Fourth Amendment to the United States Constitution for handcuffing her to her hospital bed. Defendants contend that no reasonable jury could conclude that they violated More's Fourth Amendment rights. Because I agree with this argument, I do not need to consider their alternative argument that they are entitled to qualified immunity for their actions.

1. **Dan Carey**

For Carey to be liable to More, he must have been personally involved in depriving her of her constitutional rights. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). In response to defendants' proposed fact that Carey was not present at Upland Hills, where More was handcuffed to her bed, More says only that she "cannot attest to Mr. Carey's presence" at this time and that he is not mentioned in any hospital records. Dkt. 42, at 5. Even considering

her unsworn statement, she does not say that Carey was personally involved in handcuffing her to her bed, so Carey is entitled to summary judgment.

   2. **Daniel Guentz**

Guentz was entitled to use a reasonable amount of physical force in arresting and detaining More without violating the Fourth Amendment. *Stainback v. Dixon*, 569 F.3d 767, 771–73 (7th Cir. 2009). In deciding whether Guentz's use of force was reasonable, relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 772 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). These factors must be considered from the perspective of "a reasonable officer at the scene." *Id.* Under this standard, an officer may not use handcuffs in a way that he knows will inflict unnecessary pain or injury on a person who poses little or no flight risk or threat of injury. *Id.*

In response to Guentz's motion for summary judgment, More must present admissible evidence sufficient to allow a reasonable juror to conclude that Guentz violated her rights. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). I must view all evidence in the light most favorable to More and draw all reasonable inferences in her favor. *Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). But even crediting More's version of any disputed facts, she verbally threatened to harm herself and others. No reasonable jury could conclude that Guentz acted unreasonably by restraining More with handcuffs while she was at Upland Hills. *See United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007) (police need not wait for harm to occur, "but rather may step in to prevent serious injury and restore order"). More threatened to kill herself several times. Guentz had reason to believe that she might try to harm

5

him, other officers, or hospital staff, as she was verbally aggressive toward the officers and hospital staff and she threatened hospital staff. More physically resisted Guentz twice, once when he attempted to place her in the back seat of his squad car and once when he attempted to replace her handcuffs after she used the bathroom.

In response, More says that her communication was not "offensive." Dkt. 42, at 6. She says that her behavior was caused by the stress of the situation and that her swearing may have been "quarrelsome" but that it was not belligerent. *Id.* She also says that it was unlikely that she was acting as aggressively as Guentz describes for several reasons: (1) she is a small woman; (2) Upland Hills staff injected her with calming medications; (3) she cried for 25 minutes, which would have lowered her adrenaline; (4) Guentz's incident report was unnecessarily long, suggesting that he overemphasized her behavior to justify his actions; (5) she had a civil, personal conversation with a nurse during that period; and (6) Guentz did not personally observe her behavior between 12:03 and 1:45 p.m. Despite these assertions, she does not dispute that she threatened suicide, that she threatened hospital staff, that she was verbally aggressive, or that she physically resisted Guentz.

Based on More's undisputed conduct, she posed a risk to herself and others. No jury could reasonably conclude that Guentz violated her Fourth Amendment rights by handcuffing one of her arms to her bed, particularly given that she did not complain about the severity of the restraint at the time and that she does not allege that she suffered any serious injury. The discomfort typical of being handcuffed does not itself violate the Fourth Amendment when the use of handcuffs is warranted. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (officer did not violate Fourth Amendment when he applied handcuffs "somewhat too tightly"

and plaintiff did not seek or receive medical care for any wrist injuries). Guentz is entitled to summary judgment on More's claim against him.

B. **Sanctions**

More says that defendants' counsel, Benjamin A. Sparks, signed and filed a false certificate of service regarding defendants' reply brief. Dkt. 45. She asks me to reprimand him and impose sanctions against him.

Defendants' reply brief was due on October 7, 2019. Sparks electronically filed defendants' brief on that date along with a certificate of service stating that a copy would be mailed to More. Dkt. 44. More says that she did not receive the brief until October 18. She observes that the envelope in which she received the brief was postmarked October 17, not October 7, and that it was addressed to the incorrect post office box at her prison, even though Sparks's certificate of service listed the correct post office box number. *Compare* Dkt. 44 *with* Dkt. 45-1. She accuses Sparks of intentionally putting the wrong post office box number on her brief and of withholding the filing for several days. In response, Sparks says that to the best of his knowledge, the brief was mailed on October 7, and that he did not intentionally withhold the brief or mail it to the wrong address. Dkt. 48. He says that he cannot explain why the envelope was postmarked October 17 or why the certificate of service and envelope show different post office box numbers.

No reprimand or sanction is appropriate here. More has not shown that her delayed receipt of defendants' reply brief was caused by Sparks's misconduct instead of by another source, such as mishandling by the post office. There is no reason to believe that the discrepancy between the post office boxes on the certificate of service and on the envelope was

anything other than simple error. And the delay did not prejudice More in any way, as she was not required to respond to defendants' reply brief. Accordingly, I will deny More's motion.

ORDER

IT IS ORDERED that:

1. Defendants Dan Carey and Daniel Guentz's motion for summary judgment, Dkt. 24, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

2. Plaintiff Caroline Paula More's motion for a reprimand and sanctions, Dkt. 45, is DENIED.

Entered March 24, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge